1

2

3

4

5

6       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
7                 AT TACOMA

8   DONNA JANSEN,

9                  Plaintiff,                CASE NO. C13-5954 BHS

10        v.                                 ORDER GRANTING IN PART
                                             AND DENYING IN PART
11  MICHAEL J. HALL & COMPANY,               DEFENDANT'S MOTION FOR
                                             SUMMARY JUDGMENT
12                 Defendant.

13

14        This matter comes before the Court on Defendant Michael J. Hall & Company's

15  ("Hall & Co.") motion for summary judgment (Dkt. 19).  The Court has considered the

16  pleadings filed in support of and in opposition to the motion and the remainder of the file

17  and hereby grants the motion in part and denies it in part for the reasons stated herein.

18                        **I. PROCEDURAL HISTORY**

19        On October 31, 2013, Plaintiff Donna Jansen ("Jansen") filed suit against Hall &

20  Co.  Dkt. 1.  Jansen alleges that Hall & Co. (1) violated the Family and Medical Leave

21  Act ("FMLA"), (2) failed to provide accommodations for her disability in violation of

22

Washington's Law Against Discrimination ("WLAD"), and (3) wrongfully terminated her because of her disability in violation of the WLAD. *Id.*

On December 17, 2014, Hall & Co. moved for summary judgment. Dkt. 19. On January 5, 2015, Jansen replied. Dkt. 24. On January 9, 2015, Hall & Co. replied. Dkt. 29.

## II. FACTUAL BACKGROUND

Hall & Co. is an insurance brokerage firm specializing in the placement of professional liability insurance. Dkt. 21, Declaration of Matthew Copus ("Copus Dec.") ¶ 2. Hall & Co. employs less than fifty employees. Copus Dec., Ex. A.

On October 1, 2007, Jansen began working at Hall & Co. as a customer service representative ("CSR"). Copus Dec. ¶ 3. As a CSR, Jansen provided customer service for the firm's clients. *Id.* Her duties included answering incoming calls, sending invoices to clients, answering questions, and filing claims. Dkt. 20, Declaration of Brittany Stevens ("Stevens Dec."), Ex. A ("Jansen Dep.") 29:2–17.

Prior to her employment at Hall & Co., Jansen suffered a severe spinal cord injury in an all-terrain vehicle accident. Dkt. 27, Declaration of Donna Jansen ("Jansen Dec.") ¶ 2. As a result of this injury, Jansen experiences leg spasms, chronic lower back pain, stiffness, and constipation issues. Jansen Dep. 136:14–137:14. Jansen notified employees at Hall & Co. about her spinal cord injury when she was hired. Jansen Dec. ¶ 4.

1    During her employment at Hall & Co., Jansen requested accommodations for her

2    disability.  *Id.* ¶ 5.  Hall & Co. provided Jansen with an ergonomic keyboard, a special

3    chair for her back, and time to stretch.  Jansen Dep. 133:8–134:19.

4    Throughout her employment, Jansen was expected to work from 8:00 am to 5:00

5    pm.  Copus Dec. ¶ 4.  Hall & Co. employed only three CSRs.  *Id.*  If one CSR was absent

6    or late, the other two CSRs would fill in to provide service to Hall & Co.'s clients.  *Id.*

7    Between 2011 and 2012, Jansen's attendance at work was sporadic.  Jansen Dep.

8    82:9–12.  Jansen was late to work at least sixty-five times, and she left work early at least

9    twenty-one times.  Stevens Dec., Ex. B; Copus Dec. ¶ 5.  Jansen was late to work for

10   reasons related to her disability.  Jansen Dec. ¶ 9.  Sometimes Jansen needed to come in

11   late because her leg spasms had kept her awake at night or because she had constipation

12   issues in the morning.  *Id.*; Jansen Dep. 70:1–3, 81:24–82:5.  Jansen was also late due to

13   annual doctor's visits, court hearings, traffic, weather, problems with her alarm clock, her

14   dog running away, and financial problems.  Jansen Dep. 69:2–18, 70:1–5, 103:20–21,

15   104:2–7, 109:6–24, 110:18–112:8; Jansen Dec. ¶¶ 8, 13.

16   Hall & Co.'s senior producer, Matthew Copus ("Copus"), and Head of

17   Administration, Krysten Bernal ("Bernal") had informal conversations with Jansen about

18   arriving after 8:00 am.  Copus Dec. ¶ 5; Dkt. 23, Declaration of Krysten Bernal ("Bernal

19   Dec.") ¶ 4.  Jansen told Copus and Bernal that her leg spasms and constipation issues

20   were the reason she was late to work.  Jansen Dec. ¶ 9; Copus Dec. ¶ 6.  Jansen also told

21   them that she was late to work due to problems with her son, the breakdown of her

22   marriage, and various financial problems.  Copus Dec. ¶ 6.

1    Jansen continued to arrive late and leave early.  Copus Dec. ¶ 5; Bernal Dec. ¶ 4.

2   In August 2012, Copus and Bernal decided to place Jansen on probation due to her poor

3   attendance.  Copus Dec. ¶¶ 7–8; Bernal Dec. ¶¶ 5–6.  On August 28, 2012, Copus,

4   Bernal, and Aime Carroll ("Carroll") met with Jansen to discuss the terms of her

5   probation.  Bernal Dec. ¶ 6.  Jansen's hours were reduced from 8:00 am to 5:00 pm to

6   10:00 am to 5:00 pm.  Jansen Dec. ¶ 15; Stevens Dec., Ex. C.

7    Jansen's attendance was perfect during the probationary period.  Jansen Dec. ¶ 16;

8   Bernal ¶ 8.  In September 2012, Bernal gave Jansen the option to continue her modified

9   work schedule.  Jansen Dec. ¶ 16; Bernal ¶ 8.  Jansen declined because she could not

10  afford to work only thirty hours per week.  Jansen Dec. ¶ 16; Bernal ¶ 8.

11   Jansen's schedule returned to forty hours per week.  Stevens Dec., Ex. D.  Bernal

12  instructed Jansen that she needed to call Carroll if she was going to be late.  Jansen Dec.

13  ¶ 16.  If Jansen was unable to contact Carroll, Jansen needed to call Bernal.  *Id.*

14   In the two weeks following the end of her probationary period, Jansen arrived to

15  work late three times and left work early one time.  Stevens Dec., Ex. 5.  On October 12,

16  2012, Jansen was late because leg spasms kept her awake and she needed a few extra

17  hours of sleep.  Jansen Dec. ¶ 18.  Jansen called Carroll and left a message that she would

18  be late.  *Id.*  Carroll was on vacation, so she did not receive Jansen's message.  Dkt. 22,

19  Declaration of Aime Carroll ("Carroll Dec.") ¶ 7.  Bernal called Jansen later that day to

20  find out why Jansen was not at work.  Bernal Dec. ¶ 9.  Bernal also reviewed Jansen's

21  timesheets and discovered that this was Jansen's third late arrival in the past two weeks.

22  *Id.*

ORDER - 4

1    Bernal and Copus decided to terminate Jansen due to her ongoing attendance

2    problems.  Bernal Dec. ¶ 9; Copus Dec. ¶ 10.  On October 15, 2015, Bernal, Copus, and

3    Carroll met with Jansen and informed her that her employment with Hall & Co. was

4    terminated.  Copus Dec. ¶ 11; Bernal Dec. ¶ 10.

5                                    **III. DISCUSSION**

6    Hall & Co. moves for summary judgment on Jansen's FMLA, failure to

7    accommodate, and disability discrimination claims.  Dkt. 19.  For the purposes of its

8    motion, Hall & Co. assumes that Jansen had a disability and that she was replaced by a

9    non-disabled employee.  *Id.* at 11.

10   **A.      Summary Judgment Standard**

11   Summary judgment is proper only if the pleadings, the discovery and disclosure

12   materials on file, and any affidavits show that there is no genuine issue as to any material

13   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

14   The moving party is entitled to judgment as a matter of law when the nonmoving party

15   fails to make a sufficient showing on an essential element of a claim in the case on which

16   the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

17   323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

18   could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

19   *Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must

20   present specific, significant probative evidence, not simply "some metaphysical doubt").

21   *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

22   if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

1   jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

2   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

3   626, 630 (9th Cir. 1987).

4         The determination of the existence of a material fact is often a close question.  The

5   Court must consider the substantive evidentiary burden that the nonmoving party must

6   meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

7   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

8   issues of controversy in favor of the nonmoving party only when the facts specifically

9   attested by that party contradict facts specifically attested by the moving party.  The

10  nonmoving party may not merely state that it will discredit the moving party's evidence

11  at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

12  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

13  nonspecific statements in affidavits are not sufficient, and missing facts will not be

14  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.**   **FMLA**

16        The FMLA entitles eligible employees of covered employers to take up to twelve

17  weeks of unpaid, job-protected leave each year for specific family and medical reasons.

18  Certain employers are exempt from the FMLA, including those with fewer than fifty

19  employees.  29 U.S.C. § 2611(4)(A)(i); 29 C.F.R. § 825.104(a).  Hall & Co. has fewer

20  than fifty full-time employees.  Copus Dec., Ex. A.

21        Hall & Co. argues that it was not required to offer Jansen FMLA leave because

22  Hall & Co. is exempt from FMLA coverage.  Dkt. 19 at 11.  In response, Jansen concedes

1  that her FMLA claim should be dismissed.  Dkt. 24 at 8 n.1.  Because Jansen has failed to

2  identify any material question of fact, the Court grants Hall & Co.'s motion on Jansen's

3  FMLA claim.

4  **C.    Failure to Accommodate**

5       "[The] WLAD requires an employer to reasonably accommodate a disabled

6  employee unless the accommodation would pose an undue hardship." *Frisino v. Seattle*

7  *Sch. Dist. No. 1*, 160 Wn. App. 765, 777 (2011) (citing RCW 49.60.180(2)).  To establish

8  a prima facie case for failure to accommodate, Jansen must show that (1) she had a

9  disability, (2) she was qualified to perform the essential functions of her job, (3) she gave

10  Hall & Co. notice of her disability and its accompanying limitations, and (4) upon notice,

11  Hall & Co. failed to affirmatively adopt measures that were available and medically

12  necessary to accommodate Jansen's disability.  *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138,

13  145 (2004).  "An employer is not required to reassign an employee to a position that is

14  already occupied, to create a new position, to alter the fundamental nature of the job, or

15  eliminate or reassign essential job functions." *Harrell v. Dep't of Soc. Health Servs.*, 170

16  Wn. App. 386, 398 (2012).  "[G]enerally, whether an employer made reasonable

17  accommodations or whether an employee's request placed an undue burden on the

18  employer is a question of fact for the jury." *Id.*

19       In this case, the parties dispute whether Hall & Co. could have reasonably

20  accommodated Jansen's disability by shifting her schedule back by two hours, from

21  10:00 am to 7:00 pm.  Hall & Co. argues that shifting Jansen's schedule would not have

22  been a reasonable accommodation because Jansen's presence was necessary in the

1    morning and not later in the evening.  Dkt. 19 at 15.  In response, Jansen argues that her

2    presence was not necessary in the morning.  Dkt. 24 at 11.

3        Hall & Co. has submitted evidence indicating that Jansen's presence was

4    necessary in the morning.  For example, Jansen typically had ten to twenty emails from

5    clients waiting for her when she arrived at 8:00 am.  Jansen Dep. 34:1–7.  According to

6    Jansen's supervisors, CSRs need to be at work by 8:00 am to effectively serve Hall &

7    Co.'s clients because many clients are located in the Eastern and Central time zones.

8    Copus Dec. ¶¶ 3–5; Bernal Dec. ¶ 4.  Jansen's supervisors also state that Hall & Co.'s

9    clients do not need service in the evening.  Copus Dec. ¶ 8; Bernal Dec. ¶ 6.

10        Jansen, however, points to evidence indicating that her presence was not necessary

11   in the morning.  Hall & Co. offered Jansen a permanent schedule with a start time of

12   10:00 am.  Jansen Dep. 102:13–103:4; Jansen Dec. ¶ 16.  Additionally, Jansen only spent

13   one to two hours per day on emails.  Stevens Dec., Ex. B.  There is also no evidence that

14   Jansen did not handle emails in a timely manner once she arrived at work.

15        Viewing the evidence in the light most favorable to Jansen, the Court finds that

16   there is a material question of fact as to whether shifting Jansen's schedule back two

17   hours was a reasonable accommodation.  Accordingly, the Court denies Hall & Co.'s

18   motion on Jansen's failure to accommodate claim.

19   **D.    Disability Discrimination**

20        Under the WLAD, it is unlawful for an employer to terminate an employee

21   because of a sensory, mental, or physical disability.  RCW 49.60.180(2).  To prove

22   unlawful termination based on a disability, Jansen must establish that she (1) is disabled,

ORDER - 8

(2) was discharged, (3) was doing satisfactory work, and (4) was replaced by someone not in the protected class. *Roeber v. Dowty Aerospace Yakima*, 116 Wn. App. 127, 135 (2003). If the employee produces evidence sufficient to make a prima facie case of discrimination, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse action. *Hill v. BCTI Income Fund-1*, 144 Wn.2d 172, 181–82 (2001). If the employer proffers a legitimate, non-discriminatory reason, the burden shifts back to the employee to produce evidence that the employer's reason is pretextual. *Id.* at 182. "An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact . . . that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Scrivener v. Clark College*, 181 Wn.2d 439, 448 (2014).

Here, the parties disagree whether Jansen's disability was a substantial motivating factor in Hall & Co.'s decision to terminate her. Hall & Co. argues that it terminated Jansen for attendance problems that were unrelated to her disability. Dkt. 19 at 12–13. In response, Jansen argues that her attendance problems were caused by her disability. Dkt. 24 at 14.

In Washington, "[c]onduct resulting from the [plaintiff's] disability (e.g., decrease in performance) is part of the disability and not a separate basis for termination." *Riehl*, 152 Wn.2d at 152 (citing *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139–40 (9th Cir. 2001)). "The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to

1  discharge for performance inadequacies resulting from that disability." *Humphrey*, 239
2  F.3d at 1140.

3      Jansen points to evidence that her attendance problems were caused by her
4  disability.  For example, Jansen testified that her late arrivals were due to her leg spasms
5  or constipation issues.  Jansen Dep. 42:12–43:13.  Jansen's supervisors were also aware
6  that Jansen's disability sometimes impacted her ability to arrive at work on time.  Copus
7  ¶¶ 5–6; Bernal ¶ 4.  Immediately prior to her termination, Jansen states that she was late
8  to work because of her leg spasms.  Jansen Dec. ¶ 18.  Hall & Co. ultimately terminated
9  Jansen because of her poor attendance.  Bernal Dec. ¶ 9; Copus Dec. ¶ 10.

10     Although Hall & Co. concedes that some of Jansen's attendance problems were
11 related to her disability, Hall & Co. argues that Jansen's attendance problems were
12 largely unrelated to her disability.  Dkt. 19 at 4–5, 12–13.  To support its argument, Hall
13 & Co. relies on Jansen's testimony that she was also late to work because of annual
14 doctor's visits, court hearings, traffic, weather, problems with her alarm clock, and her
15 dog running away.  Jansen Dep. 69:2–18, 70:1–5, 103:20–21, 104:2–7, 109:6–24,
16 110:18–112:8.

17     Viewing the evidence in the light most favorable to Jansen, the Court finds that
18 there is a material question of fact as to whether Jansen's disability was a substantial
19 motivating factor in Hall & Co.'s decision to terminate her.  A jury could reasonably find
20 a causal link between Jansen's disability and her poor attendance and conclude that Hall
21 & Co. fired her because of her disability.  *See Riehl*, 152 Wn.2d at 152–53; *Humphrey*,
22

239 F.3d at 1140.  The Court therefore denies Hall & Co.'s motion on Jansen's disability

discrimination claim.

### IV. ORDER

Therefore, it is hereby **ORDERED** that Hall & Co.'s motion for summary

judgment (Dkt. 19) is **GRANTED in part** with respect to Jansen's FMLA claim and

**DENIED in part** with respect to Jansen's failure to accommodate and disability

discrimination claims.

Dated this 11th day of February, 2015.

BENJAMIN H. SETTLE
United States District Judge